**FILED**

**November 18, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 7:15 AM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| **MARSHALL BEENE,** | ) | **Docket No.: 2016-07-0264** |
| **Employee,** | ) | |
| **v.** | ) | |
| **METRO SERVICES, INC.,** | ) | **State File Number: 66494-2014** |
| **Employer,** | ) | |
| **And** | ) | |
| **ACCIDENT FUND INS. CO.,** | ) | **Judge Thomas Wyatt** |
| **Insurance Carrier.** | ) | |
| | ) | |

## EXPEDITED HEARING ORDER FOR ADDITIONAL MEDICAL AND TEMPORARY DISABILITY BENEFITS

This matter came before the undersigned Workers' Compensation Judge on November 3, 2016, upon the Request for Expedited Hearing filed by Marshall Beene pursuant to Tennessee Code Annotated section 50-6-239 (2015). Mr. Beene seeks medical benefits, including authorization to see physicians to whom the authorized treating physician (ATP) referred him, as well as temporary disability benefits. Included among several issues the Court must decide are the work-relatedness of Mr. Beene's alleged cervical spine injury[1] and whether he has attained maximum medical improvement from his compensable injuries. For the following reasons, the Court determines Mr. Beene is entitled to additional medical and temporary disability benefits.[2]

### History of Claim

Mr. Beene is a sixty-year-old resident of Chattanooga, Hamilton County, Tennessee, whom Metro Services employed to perform sheet metal work on a project to install a commercial HVAC system. (T.R. 1 at 1.) On August 21, 2014, Mr. Beene

---

[1] Metro Services accepted the compensability of Mr. Beene's right elbow, rotator cuff and shoulder injuries. It, however, challenged the compensability of his alleged cervical spine injury.

[2] The Court has attached a complete listing of the technical record and exhibits admitted at the Expedited Hearing to this Order as an appendix.

1

suffered injury when he fell from one of the top two rungs of an eight-foot ladder while installing ductwork. He testified he fell onto a slotted metal floor in such a manner that his "right elbow jammed into his neck." Metro Services and its carrier accepted Mr. Beene's injury as compensable.

After receiving emergent care, Mr. Beene saw orthopedic surgeon Dr. Brandon Cincere. (Ex. 5 at 15.) Dr. Cincere noted Mr. Beene complained primarily of right elbow pain. Dr. Cincere noted it was difficult to examine Mr. Beene's elbow because of the extreme level of pain with which he presented. *Id.* at 17.

Later, Dr. Cincere noted Mr. Beene reported a sharp burning pain from the right elbow to the neck in addition to severe right elbow pain. (Ex. 5 at 19.) He ordered testing and physical therapy. An MRI of the elbow revealed a tear of the superficial triceps tendon. An EMG of the right arm revealed moderate damage to the ulnar nerve and developing carpal tunnel syndrome. *Id.* at 2, 4.

In his November 18, 2014 note, Dr. Cincere recorded that Mr. Beene's physical therapist suggested cessation of therapy until Mr.Beene could obtain injections in his elbow. (Ex. 5 at 27.) Dr. Cincere referred Mr. Beene to Dr. Gregory Ball to "evaluate and treat for pain management." Injections performed by Dr. Ball reduced Mr. Beene's elbow pain, but did not improve the symptoms associated with his shoulder and rotator cuff injuries.[3] (Ex. 5 at 35, 39.) Dr. Cincere ordered MRIs of Mr. Beene's right shoulder and cervical spine. *Id.* at 29.

The MRI of the right shoulder showed multiple rotator cuff tears, moderate acromioclavicular arthropathy and mild rotator cuff impingement. (Ex. 5 at 10.) The cervical spine MRI revealed osteophytes causing canal and bilateral foraminal stenosis at the disc spaces between the C3 and C7 vertebrae. *Id.* at 11.

In June of 2015, Dr. Cincere surgically repaired Mr. Beene's rotator cuff tears, decompressed his right shoulder joint, and performed a suprascapular nerve block. *Id.* at 43. At the first post-op visit in August 2015, Mr. Beene reported improvement in his shoulder pain, but began reporting recurrence of significant right elbow pain. *Id.* at 52.

In September, Dr. Cincere noted Mr. Beene complained of sharp pain radiating down his right arm to his hand. (Ex. 5 at 55.) He noted that workers' compensation had stopped the physical therapy he ordered for Mr. Beene and stated that "unrealistic WC restrictions" had inhibited Mr. Beene's care. *Id.* at 56. Dr. Cincere referred Mr. Beene back to Dr. Ball for "ganglion injections . . . and RSD treatment," and referred him to spine surgeon Dr. Todd Bonvallet for treatment of his cervical spine. *Id.*

---

[3] Dr. Ball's initial treatment note of February 26, 2015, indicated he diagnosed Reflex Sympathetic Dystrophy of the right-upper extremity. (Ex. 6 at 4.) Later in his notes, he referred to the diagnosis as Complex Regional Pain Syndrome. *Id.* at 25. He appeared to use the diagnoses interchangeably.

During an October 2015 visit, Mr. Beene reported that workers' compensation had not approved the referrals to Drs. Ball and Bonvallet. (Ex. 5 at 58.) Dr. Cincere's response was, "WC carrier making it difficult to care for patient, interfering with my treatment, I have nothing left to offer the patient." *Id.* at 60. He referred Mr. Beene's ongoing care to Drs. Ball and Bonvallet. *Id.*

About the time Dr. Cincere declined to further treat Mr. Beene, the carrier for Metro Services obtained a records review IME from orthopedic surgeon Dr. Thomas Koenig. (Ex. 1.) Dr. Koenig issued a November 14, 2015 report that, among other opinions, stated Mr. Beene "does warrant the prescribed additional 2 to 3 stellate ganglion blocks that historically have provided 'great relief'" *Id.* at 10. He also opined Mr. Beene would not attain maximum medical improvement until two to three months after the last stellate block.[4] *Id.*

Despite Dr. Koenig's and Dr. Cincere's treatment recommendations, Mr. Beene's treatment ground to a halt. On February 9, 2016, Dr. Cincere rated Mr. Beene's shoulder injury for impairment, setting the date of maximum medical improvement for the shoulder injury alone at January 19, 2016.[5] (Ex. 7.) Mr. Beene saw Dr. Ball on July 21, after more than a year's absence from his care. (Ex. 6 at 21, 23.) Dr. Ball opined that Mr. Beene needed another series of ganglion stellate blocks, accompanied by aggressive physical therapy, to treat the Complex Regional Pain Syndrome in his right-upper extremity. *Id.* at 23, 26. He stated Mr. Beene might attain maximum medical improvement in six to nine months from the date of the report "[w]ith cooperation with the work comp adjuster, and no delays in pursuing appropriate treatment options." *Id.* at 23.

Mr. Beene saw orthopedic surgeon Dr. Todd Bonvallet just once, in December 2015. (Ex. 2 at 1.) Upon review of the cervical-spine MRI, Dr. Bonvallet diagnosed Mr. Beene with degenerative and disc displacement conditions. He took Mr. Beene off work "until [the] next follow up appointment." *Id.* at 5-6. Mr. Beene, however, did not see Dr. Bonvallet again because Metro Services' carrier did not approve a follow-up appointment.

Mr. Beene filed his Petition for Benefit Determination on August 8, 2016, seeking a panel from which to select an ATP to replace Dr. Cincere; authorization to see Drs. Ball and Bonvallet; and additional temporary disability benefits. (T.R. 1 at 1.) After

---

[4] Additionally, Dr. Koenig opined that, although he felt the diagnosis of Complex Regional Pain Syndrome in Mr. Beene's right-upper extremity was equivocal, the condition was work-related if Mr. Beene had it. (Ex. 1 at 8.) He stated the conditions in Mr. Beene's cervical spine and, possibly, his rotator cuff tear and right-shoulder arthrosis pre-existed Mr. Beene's fall at work. *Id.*

[5] The records admitted into evidence do not establish that Dr. Cincere provided an impairment rating for Mr. Beene's elbow injury or Complex Regional Pain Syndrome.

3

mediation failed to resolve the issues between the parties, the mediator issued a Dispute Certification Notice. (T.R. 2.) Soon thereafter, Mr. Beene requested an Expedited Hearing. (T.R. 3.)

During the Expedited Hearing, Metro Services agreed to pay for further reasonable and necessary treatment of Mr. Beene's right-upper extremity injury, but argued Mr. Beene failed to establish the need for additional treatment. It also argued Mr. Beene did not establish entitlement to medical benefits for treatment of Mr. Beene's cervical spine condition because that condition pre-existed his work injury. Finally, Metro Services contended it does not owe additional temporary disability benefits because Dr. Cincere rated Mr. Beene's injuries for impairment and placed him at maximum medical improvement.

## Findings of Fact and Conclusions of Law

Mr. Beene bears the burden of proof on all essential elements of his claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). Because this claim is in the posture of an Expedited Hearing, he need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, Mr. Beene must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1)(2015).

### *Medical Benefits Issues*

#### *A.     Mr. Beene is Entitled to Treatment by Dr. Ball*

The determination of Mr. Beene's claim for additional medical benefits requires analysis of complementary provisions of Tennessee Code Annotated section 50-6-204 (2015), the provision governing an employer's obligation to provide treatment of an employee's work-related injury. Section 50-6-204(a)(3)(A)(i) (2015) provides, "[t]he injured employee shall accept the medical benefits afforded under this section; provided . . . the employer shall designate a group of (3) or more independent reputable physicians, surgeons, chiropractors or specialty groups . . . from which the injured employee shall select one (1) to be the treating physician."

While the above-quoted provision establishes that a single ATP will provide the treatment for a work injury, the general assembly also foresaw that the ATP would, at times, refer the employee for specialized care. Section 50-6-204(a)(3)(A)(ii) (2015) authorizes the ATP to refer the employee for specialized care, but requires that the

4

employee select a physician from a panel for the referred care if the employer provides the panel within three business days from the date of the referral. If the employer does not timely provide the employee a panel, the law deems that the employer accepts the referral to the physician selected by the ATP.

Mr. Beene contended that the Court should order Metro Services to authorize treatment with Dr. Ball pursuant to the referral Dr. Cincere made in October 2015. In considering this issue, the Court first notes that Metro Services previously authorized Dr. Cincere's November 2014 referral to Dr. Ball. Dr. Cincere's records establish that he again referred Mr. Beene to Dr. Ball in October 2015, and that he communicated this referral in the same note in which he communicated his decision to no longer treat Mr. Beene. Metro Services submitted no evidence that it offered Mr. Beene a panel of physicians following Dr. Cincere's October 2015 referral to Dr. Ball; thus by operation of section 50-6-204(a)(3)(A)(ii), Metro Services must accept the referral to Dr. Ball.

During the Expedited Hearing, Metro Services offered several unpersuasive explanations for why it failed to authorize a physician to treat Mr. Beene's work injury following Dr. Cincere's decision to decline further treatment. It first contended the fact Dr. Cincere opted out of Mr. Beene's treatment meant Mr. Beene did not require further treatment. To the contrary, a review of Dr. Cincere's October 2015 note indicates that Dr. Cincere opted out of Mr. Beene's treatment because Metro Service's carrier had, in Dr. Cincere's mind, improperly interfered with his treatment recommendations. Later in the same note, Dr. Cincere referred Mr. Beene to Drs. Ball and Bonvallet, thus indicating his opinion that Mr. Beene continued to require treatment of his right-upper extremity and neck injuries even though Dr. Cincere would not provide the treatment. In view of the above, the Court finds Dr. Cincere's decision to opt out of Mr. Beene's treatment did not provide Metro Services with a valid excuse for failing to authorize additional treatment of Mr. Beene's right-upper extremity injury.

Metro Services also cited its denial of the compensability of Mr. Beene's neck injury as explanation for its inaction in authorizing Mr. Beene's ongoing care. While the issue regarding the compensability of Mr. Beene's neck injury may have clouded the future treatment issue, it did not provide Metro Services an excuse to totally stop Mr. Beene's treatment as it did. Dr. Cincere's October 2015 note clearly communicated his intent to transfer treatment of Mr. Beene's right-upper extremity injury to Dr. Ball. Furthermore, Metro Services' own IME physician established the medical necessity of the injection therapy recommended by Dr. Ball. In consideration of the above facts, the Court can see no viable reason why Metro Services could not have challenged the referral to Dr. Bonvallet while authorizing the referral to Dr. Ball.

Metro Services also offered the impairment rating given by Dr. Cincere in February 2016, in explanation for why it did not authorize Mr. Beene for treatment by Dr. Ball. The Court finds nothing associated with Dr. Cincere' impairment rating that exempts Metro Services from its obligations to provide ongoing treatment of Mr. Beene's

right-upper extremity injury. Dr. Cincere's records indicate his rating was confined to Mr. Beene's shoulder injury and are, likewise, clear that he did not rate Mr. Beene's elbow injury/Complex Regional Pain Syndrome when he rated the shoulder injury. Accordingly, the Court finds that Dr. Cincere's rating of Mr. Beene's shoulder injury does not legitimately explain Metro Services' failure to authorize ongoing treatment of Mr. Beene's right-upper extremity injury.

Dr. Ball's records establish that he recommends additional stellate injections and physical therapy to treat the Complex Regional Pain Syndrome in Mr. Beene's right upper extremity. Furthermore, Dr. Ball opined Mr. Beene will not attain maximum medical improvement from his compensable right-upper extremity injury until several months after his treatment protocol begins.[6] In view of the above evidence, the Court finds that, at a hearing on the merits, Mr. Beene will likely prevail in establishing that he is entitled to see Dr. Ball for treatment of his compensable right-upper extremity injury.

The Court's decision regarding the compensability of Dr. Ball's treatment resolves the issue of who will become Mr. Beene's ATP. Tennessee Code Annotated section 50-6-204(a)(3)(E) provides that, when an ATP makes a referral for specialty care, "the specialist . . . to which the employee has been referred . . shall become the treating physician until treatment by the specialist . . . concludes and the employee has been referred back to the [ATP][.]" Accordingly, Dr. Ball shall become Mr. Beene's ATP until he concludes his treatment and refers Mr. Beene from his care. At that point, Metro Services shall provide Mr. Beene a panel of physicians from which he can select an ATP who is qualified to provide ongoing treatment of his compensable injuries.

For the present, however, Dr. Ball's July 2016 note indicated he is willing to treat Mr. Beene. Accordingly, Mr. Beene is entitled to the reasonable and necessary treatment of his compensable right-upper extremity injury by Dr. Ball and this Court orders Metro Services and its carrier to promptly authorize Dr. Ball to provide said treatment.

Metro Services' and its carrier's inattention to Mr. Beene's treatment needs following Dr. Cincere's declination to further treat Mr. Beene troubles the Court. Tennessee Code Annotated section 50-6-118(a)(11) (2015) provides that the Bureau of Workers' Compensation "shall establish and collect penalties for . . . [f]ailure of any employer to timely provide medical treatment made reasonably necessary by the accident and recommended by the authorized treating physician[.]" The Court reasonably believes Metro Services' failure to authorize Mr. Beene for treatment by Dr. Ball pursuant to Dr. Cincere's October 2015 referral may constitute a sufficient failure to justify the imposition of a penalty. Upon its issuance, a copy of this Order will be provided to the Bureau's Penalty Unit in accordance with Tenn. Comp. R. & Regs., 0800-02-24-.03

---

[6] Metro Services' own IME doctor opined that the stellate blocks recommended by Dr. Ball were medically necessary and Mr. Beene would not attain maximum medical improvement until two to three months after the last stellate block occurred. Despite this fact, Metro Services and its carrier did nothing to provide Mr. Beene the treatment Drs. Ball and Koenig opined he needed.

6

(2015)[7]

### B.  Mr. Beene is Not Entitled to Treatment by Dr. Bonvallet

While Dr. Cincere referred Mr. Beene for cervical-spinal treatment by Dr. Bonvallet, the referral, standing alone, does not resolve the issue of whether Mr. Beene is entitled to see Dr. Bonvallet under workers' compensation. Instead, the Court finds Metro Services is correct in its position that Mr. Beene is not entitled to see Dr. Bonvallet for authorized care unless he establishes that his cervical spine condition arose primarily out of and in the course and scope of employment.

The Tennessee Workers' Compensation Law limits its coverage to an injury—including an injury caused by a work-related aggravation of a pre-existing condition—that arose primarily out of and in the course and scope of employment. *See* Tenn. Code Ann. § 50-6-102(14)(A) (2015). In response to a causation letter sent him by counsel for Mr. Beene, Dr. Cincere wrote that Mr. Beene's "cervical spine chronic problem [was] likely aggravated by [his work] injury." (Ex. 9 at 3.) However, in response to another inquiry in the letter as to whether Mr. Beene's fall at work "contribute[d] to more than fifty percent (50%) in causing injuries to his cervical spine, considering all causes and aggravations of any pre-existing condition," Dr. Cincere marked the line designated "No." Based on the statutory definition set forth in section 50-6-102(14), the Court holds that Mr. Beene failed to establish he will likely prevail at trial in establishing the work-relatedness of his cervical spine injury.

Mr. Beene contends that, although Dr. Cincere failed to relate the causation of his neck injury itself to his injurious incident at work, he did opine that Mr. Beene's fall at work aggravated his pre-existing neck condition. In corroboration of the latter opinion of Dr. Cincere, Mr. Beene testified he had not experienced neck pain for many years since obtaining successful resolution of an injury that occurred many years ago. Based on the above evidence, Mr. Beene claims he established entitlement to medical benefits from Metro Services to treat the symptoms from the work-related aggravation of his neck condition.

While Mr. Beene's position is inventive, the definitions in the Workers' Compensation Law specifically rebut it. Tennessee Code Annotated section 50-6-102(C)(14) (2015) provides that, "[a]n injury causes . . . *the need for medical treatment* only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . need for medical treatment, considering all causes." (Emphasis added.) In view of Dr. Cincere's opinion that Mr. Beene's neck condition did not arise primarily out of and in the course and scope of his employment, the Court holds Mr. Beene is not entitled to any benefits, including medical benefits, for

---

[7] "In addition to referrals made by a workers' compensation judge, any [Bureau] employee may refer any person or entity to the penalty program for the assessment of a civil penalty whenever the referring employee believes that there may have been a violation of the [Bureau's] rules or the Tennessee Workers' Compensation Act."

that condition at this time.

*Temporary Partial Disability Benefits Issues*

During the Expedited Hearing, Mr. Beene contended he had not received temporary disability benefits since March 3, 2016.[8] The parties stipulated that Mr. Beene's average weekly wage was $1,271.41, thus the applicable weekly compensation rate is $847.60.

Tennessee Code Annotated section 50-6-207(2) (2015) provides for temporary partial disability benefits. In *Jones v. Crencor Leasing and Sales,* No. 2015-01-0332, 2015 TN Wrk. Comp. Bd. LEXIS 48, at *7-8 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015), the Tennessee Workers' Compensation Appeals Board, citing *Simpson v. Satterfield,* 564 S.W.2d 953, 955 (Tenn. 1978), held, "[a]n injured worker is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability." The Appeals Board further held in *Jones* that an injured worker may qualify for temporary partial disability benefits if the employer cannot accommodate the restrictions under which a physician released an employee to return to work or provide the restricted employee with earnings that equal or exceed the pre-injury average weekly wage. *Id.* at *7-8.

The Court holds that, at a hearing on the merits, Mr. Beene will likely prevail in establishing his entitlement to temporary partial disability benefits. As indicated above, the Court finds Mr. Beene's right-upper extremity injury arose primarily out of and in the course and scope of employment. In his response to a June 20, 2016 letter from Mr. Beene's counsel, Dr. Cincere indicated he would restrict Mr. Beene's activities "while receiving additional treatment" of his work injury to "no use (lifting, reaching, repetitive) of [his] right upper extremity." (Ex. 9 at 2.) He further indicated he would not place Mr. Beene at maximum medical improvement while undergoing the additional medical treatment.[9] In view of the above, the Court holds Mr. Beene is entitled to temporary partial disability benefits in the amount of $847.60 per week[10] from March 4, 2016, until Dr. Ball releases him to return to work, or determines he has attained maximum medical improvement for the right-upper extremity injury.

---

[8] Metro Services did not dispute this contention.

[9] As indicated earlier, Dr. Ball stated he would not place Mr. Beene at maximum medical improvement until six to nine months after his treatment protocol began. Also, Dr. Koenig stated that the date of maximum medical improvement would occur two to three months after Mr. Beene received the recommended stellate blocks.

[10] Mr. Beene testified he has not worked since the date of injury due to pain from his work injuries. The Court finds this testimony credible. Accordingly, under the formula for calculating temporary partial disability benefits set forth in Tennessee Code Annotated section 50-6-207(2)(B) (2015), the applicable compensation rate for Mr. Beene's temporary partial disability benefits is the same as it was for temporary total disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Metro Services and its carrier shall provide Mr. Beene additional medical benefits, to be initiated by promptly authorizing treatment by Dr. Gregory Ball.

2. Mr. Beene's claim for medical benefits in the form of authorized treatment by Dr. Todd Bonvallet is denied.

3. Metro Services shall pay Mr. Beene temporary partial disability benefits in the amount of $847.60 from March 4, 2016, to the date of the issuance of this order, for a total payment of accrued benefits of $31,362.31. It shall continue to pay Mr. Beene temporary partial disability benefits until Dr. Ball or a newly-designated ATP places Mr. Beene at maximum medical improvement from his work injuries.

4. Should counsel for Mr. Beene seek an attorney's fee based on the benefits ordered herein, he shall file a fee petition with supporting affidavit with the the Court Clerk.

5. **This matter is set for a Status Hearing on February 6, 2017, at 10:00 a.m. Eastern Time.**

6. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Penalty Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 18th day of November, 2016.**

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

9

Status Hearing:

A Status Hearing has been set with **Judge Thomas Wyatt, Court of Workers' Compensation Claims. You must call toll-free at 855-747-1721 or 615-741-3061 to participate in the Status Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing

Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

The Court admitted the following evidence into the record during the Expedited Hearing:

Exhibits:

1. Medical records of Dr. Thomas M. Koenig;
2. Medical records of Dr. Todd Bonvallet/Spine Surgery Associates;
3. MRI report of Dr. Grant Huntzinger/Chattanooga Outpatient Center;
4. EMG/NCS report of Dr. James Little/Southern Rehabilitation Group;
5. Medical records of Dr. Brandon Cincere/OrthoSouth;
6. Medical records of Dr. Gregory Ball/Consultants in Pain Management;
7. Final Medical Report (C-30A) of Dr. Brandon Cincere;
8. Wage Statement (C-41);
9. Responses of Dr. Brandon Cincere to June 20, 2016 letter from Attorney Lew Belvin; and
10. Admitted for Identification only: Complete set of medical records pertinent to Mr. Beene's treatment.[11]

Technical record:[12]

1. Petition for Benefit Determination, filed August 8, 2016;
2. Dispute Certification Notice, filed September 28, 2016;
3. Request for Expedited Hearing, filed October 11, 2016;
4. Affidavit of Marshall Beene, filed October 11, 2016;
5. Mr. Beene's Brief Supporting Petition for Benefit Determination, filed September 28, 2016; and
6. Metro Services, Inc.'s Position Statement, filed September 28, 2016.

---

[11] Counsel for Mr. Beene introduced this set of records, comprising more than 379 pages, to make sure the Court had complete sets of the records of Drs. Cincere, Ball and Bonvallet. Counsel for Metro Services stipulated to the authenticity and admissibility of the entire set of records. The Court admitted Exhibit 10 for identification purposes for the sole purpose of supplementing the exhibits containing the records of Drs. Cincere, Ball and Bonvallet. The Court removed records from Exhibit 10 and placed them in Exhibits 5 and 6, so that those exhibits would include complete sets of, respectively, Drs. Cincere's and Ball's records. The Court did not consider the other records in Exhibit 10 and will not include them as evidence admitted during the Expedited Hearing.

[12] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 18th day of November, 2016.

| Name | Via Email | Service sent to: |
|---|---|---|
| Lew Belvin, Attorney for Employee | X | Lew.belvin@mcmahanlawfirm.com |
| Gordon Aulgur, Attorney for Employer | X | Gordon@accidentfund.com |
| Penalty Program | X | WCCompliance.Program@tn.gov |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims